GIBBS *v.* DETROIT TRUST CO.

RECEIVERS—LIABILITY OF RECEIVER PERSONALLY.
Where contract is made solely with receiver by one who has full knowledge of facts and intends to bind receiver only, without any intention of holding receiver personally, and by his subsequent conduct shows that he looks solely to receiver, he may not collect from receiver personally when it is later ascertained that bond filed by bankrupt was inadequate.

Appeal from Wayne; Ferguson (Homer), J. Submitted June 14, 1933. (Docket No. 68, Calendar No. 37,258.) Decided August 29, 1933.

Assumpsit by George R. Gibbs, trading as George R. Gibbs & Company, against Detroit Trust Company, a Michigan corporation, for balance due under contract for accounting services. Judgment for plaintiff. Defendant appeals. Reversed, and remanded.

*Robert M. Brownson, Kenneth Murray,* and *Paul Marco,* for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

BUTZEL, J.   Detroit Trust Company was appointed receiver in bankruptcy of J. L. Kelley Company by the United States district court for the eastern district of Michigan and ordered to forthwith file a report of the financial condition of the bankrupt, list its liabilities and assets, and make recommendations. In order to do this, it found it advisable to have an audit made, and accordingly employed Gibbs, Leslie & Company, public accountants, a corporation in which plaintiff, George R. Gibbs, was actively interested.   The accountants, referred to herein as the company, had been working on an audit for the Kelley Company, whose business was very involved. The company had received payment on account from Kelley, but there was a balance of approximately $150 remaining unpaid on an incomplete audit.   It was agreed that in consideration of the payment of the balance due and an additional sum, estimated to be about $600, the company would complete the audit.   The Detroit Trust Company, as receiver, thereupon petitioned the court for authority to have the audit made for the sum of $750, and an order was so made.   Later, the company informed an agent of the receiver that the books of the bankrupt were in such condition that nothing in them could be assumed to be correct, and that it would be necessary to obtain information from outside sources in order to build up a statement which would reflect the true condition; that this would cost an additional sum of $750.   The company was told to proceed with the audit.   It knew that the trust company had been appointed receiver.   It must have known from its con-

tacts with the receiver, as well as from the very nature of the work, that it was working for a receiver. It unquestionably looked for its compensation to the receiver, to whom it rendered its bills. The trust company, as receiver, filed its final report showing an indebtedness of $1,500 due the company. The bankrupt made an offer of composition, and filed a $10,000 bond to pay a 10 per cent. composition and all of the expenses of administration; $750 was paid to the accountants by check of the receiver. The bankrupt failed, however, to make a sufficient deposit to pay many of the creditors and expenses of administration, including the balance of $750 due the company. An order was thereupon issued directing the bankrupt and its surety on the deposit bond to show cause why they should not pay the amounts due and unpaid. However, nothing further was paid. Plaintiff went to the referee in bankruptcy to ascertain why its claim had not been paid, and it is evident from the memorandum made by plaintiff, as well as by all the other circumstances, that the company was looking solely to the receiver for payment. Thereafter, plaintiff filed a verified petition in the United States district court setting forth that he was a certified public accountant and successor to Gibbs, Leslie & Company, who were employed by the receiver to audit the books of the bankrupt; that it was agreed between the receiver and the company that the latter should receive $1,500 for its services; that it had presented its bill to the receiver before the estate was distributed, and that it had only received $750, and that when it demanded payment of the balance of $750 it was informed by the receiver that the estate had been distributed and that there were no funds available. It prayed that the Detroit Trust Company show cause why it should not pay the balance

of $750. Upon the hearing, plaintiff's petition was denied without prejudice. He thereupon began a suit in assumpsit, and set forth in the declaration that the Detroit Trust Company, receiver, had employed the company and that it was agreed between the receiver and the company that the sum of $1,500 would be paid for such services; that the services were rendered to the receiver, but that defendant, in its individual capacity, had not paid the balance of $750, for which plaintiff asked judgment. The declaration concluded with the common counts. Both declaration and testimony show that the work was performed for the receiver, and with the company's full knowledge of the receivership; that the contract was not with the defendant individually, but with it as receiver. There was no mistake of fact or any reason to even remotely believe that the defendant was contracting in its individual capacity. Plaintiff, however, claims that inasmuch as the defendant neglected to present a petition for authority to pay the additional sum of $750 for the audit, it should be held liable. The amounts that were paid to the creditors, as well as the partial payments made for expenses, were paid directly by order of the bankruptcy court. It is not claimed that the defendant either accepted or approved of the bond filed in the bankruptcy court. While it is not determinative of the question, there is no showing whatsoever that the failure to secure an order to pay the additional $750 in any way prejudiced plaintiff's rights. It is evident that the sole cause of the failure to recover was the fact that a bond, which proved to be worthless, had been accepted. The declaration alleges that the contract was with the receiver and not with defendant as an individual. Every action on the company's part shows it was looking solely to the receiver. The

trial court held that a receiver is responsible for indebtedness incurred without authority, and referring to the cases of *In re Kalb & Berger Manfg. Co.*, 91 C. C. A. 573 (165 Fed. 895), and *Vansenden* v. *Kerr*, 89 W. Va. 62 (108 S. E. 483), found in plaintiff's favor and rendered a judgment against defendant.

While the case presents a very close question, we believe that the trial court was in error under the facts in the instant case. The cases referred to by the court not only present different facts from the instant case, but they decide questions of practice and pleading under particular conditions. The rule laid down by the learned judge in the instant case is subject to certain qualifications. Where a contract is made solely with the receiver by one who has full knowledge of the facts and intends only to bind the receiver, without any intention of holding the receiver personally, and by his subsequent conduct shows that he looks solely to the receiver, he cannot collect from the receiver personally when it is later ascertained that the bond filed by the bankrupt to pay the expenses was inadequate. We believe that the case very much resembles that of *Wilson's Estate*, 252 Pa. 372 (97 Atl. 453), where the court said:

"There was no concealment or misrepresentation of the facts alleged, and the officers of the bank, in dealing with the receiver, were bound to take notice of, and recognize, the limits of his authority, and contracted with him at their peril (citing cases).

\* \* \*

"In the present case there was no agreement that the receiver was to be bound in his individual capacity, as was suggested by the court in the above case, as a possible precaution. On the contrary, the attempt is to hold the receiver personally liable after the claimant was disappointed in not receiving payment out of the corporation's estate. In absence of

fraud, or concealment, or an intention or agreement to assume liability, we are unable to agree with the contention that the receiver is personally liable whenever he does an act in excess of his authority. The principle which holds that one dealing with a receiver is bound to know the limits of his authority, and contracts with him at his peril, does not sanction a shifting of the liability to the receiver, so long as he acts fairly and in good faith, and conceals or misrepresents nothing. The logical result of the principle referred to is the opposite conclusion—that the loss must be borne by the person upon whom it falls, unless the parties expressly, or by the form of the instrument, contracted for personal liability.''

Also, see *Southern Supply Co.* v. *Mathias,* 147 Md. 256 (128 Atl. 66).

Judgment of the lower court is reversed and the case remanded with directions to enter judgment for defendant, which will recover costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, and WIEST, JJ., concurred. FEAD, J., did not sit.